Under 8 U.S.C. § 1254 A.D. 4, a noncitizen with temporary protected status, or TPS, may not, shall not be detained on the basis of his immigration status in the United States. Is there anything in the record to indicate why your client re-entered not at an authorized point of entry? Why he entered at a non-authorized point of entry, no. What's in the record is that he left without obtaining advance parole from the Attorney General on an emergency basis to visit his very sick mother and the man that he considered his stepfather, and that he did not have the money or the time to seek advance parole prior to leaving. Well, he stayed seven months, as I recall, and he came back through an illegal entry point, correct? That's clear in the record, isn't it? Almost. He did come through an illegal entry point, Your Honor. He was gone from late November to early March. He did enter unlawfully in early March, and he was actually kidnapped by a criminal organization for two months in Texas, escaped, went back to Reynosa, Texas for — I'm sorry, Reynosa, Mexico for six weeks, and then returned through an unlawful entry point. And at that point, he was apprehended by the Customs and Border Protection. Before you get into your merits, how about covering why we even have jurisdiction? Yes. 8 U.S.C. 1252G does not strip the court of jurisdiction to hear Hernandez's claim. Hernandez's detention did not arise from the decision or action by the government to commence proceedings. Removal proceedings commence with the filing of a notice to appear in immigration court pursuant to the regulations and pursuant to this Court's holding in de Leon-Holgan v. Ashcroft. Now, the term notice to appear is defined in 8 U.S.C. section 1229A. The Supreme Court held in Pereira v. Sessions that section 1229A defines notice to appear as a written notice that specifies the time and place at which removal proceedings will be held. The Court stated when the term notice to appear is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time and place criteria required by section 1229A. The notice to appear issued to Hernandez did not contain the time or date of hearing. Under the plain language of section 1229A in Pereira, a notice to appear ---- That seems inconsistent with what you ---- how you started. You said because simply issuing a notice to appear does not commence a proceeding. How about sticking to that point? Yes, Your Honor. Simply issuing a notice to appear is not the functional equivalent of commencing proceedings. That was issued to him when he was arrested in June the 13th, 2013? That was issued to him. It is a disputed fact as to whether he was actually served with the notice to appear. But it was not filed until the 12th of July, 2013. That's correct, Your Honor. So we've got roughly approximately a month between issuance and filing. That's right, Your Honor. And your position is because it was not filed, no proceeding commenced. That's right. And therefore, 1252G doesn't apply. That's right, Your Honor. This Court stated in Humphreys v. Federal U.S. INS Employees, we would defy logic by holding that a claim for relief somehow arises from decisions and actions accomplished only after the alleged injury occurred. The government contends that the decision to issue a notice to appear is the functional equivalent of deciding to file the notice to appear or to commence proceedings. And there are no facts in the record that show that the government's decision to issue the notice to appear was the same as the decision to commence proceedings. And in the record is the Morton memo written by former ICE Director John Morton that was in effect at the time of Hernandez's detention. And that memo makes clear that issuing, serving, filing, and canceling notices to appear are separate and distinct decisions — actions that require separate and distinct actions — decisions. And the memo outlined procedures for ICE attorneys to follow if they decided not to issue — not to file the NTAs issued by CBP. And that's starting on page 663 of the record, Your Honor. And it's also your position that jurisdiction is not precluded under 1226e? That's correct, Your Honor. Jurisdiction is not precluded under 1226e because that statute states the Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. Detention of noncitizens with TPS is not a discretionary decision. It's prohibited by the statute. Detention of noncitizens with TPS is prohibited by 8 U.S.C. 1254a.d.4. And when 1226e is talking about this section, they're talking about 8 U.S.C. section 1226. And 8 U.S.C. section 1226a is the statute that generally governs discretionary detention of removable noncitizens. 1226e governs mandatory — sorry, 1226c governs mandatory detention of certain noncitizens with criminal records, and that does not apply to Mr. Hernandez. 1226a does not apply to Mr. Hernandez, one, because it covers discretionary detention and noncitizen — detention of noncitizens with TPS is prohibited. Two, because 1226a actually states pending a decision as to whether an alien is to be removed, the alien may be detained under 1226a. And for a noncitizen with TPS, there's no decision to be made as to whether the alien should be removed, because under the TPS statute, removal of a noncitizen with TPS is prohibited. Also, if there's any conflict between section 1226a and 1254a.d.4, 1254a.d.4, the specific prohibition of detention of noncitizens governs the general discretionary allowance to detain certain removable noncitizens. If 1226a allowed for detention of noncitizens with TPS, there would be no reason for 1254a.d.4, which prohibits the detention of noncitizens with TPS. And that was the basis on which he was released in July of 2013, because TPS — they had confirmed his TPS status. That is what the government has explained, Your Honor. It's not — the reason isn't actually in the record, but that is what the government set forth in the hearing. But it is a fact, an undisputed fact, that Mr. Hernandez never — USCIS never withdrew TPS from Mr. Hernandez, and on June 13, 2013, day one of the detention, the government knew that he had TPS, confirmed that he had TPS. Yet — I thought the confirmation was later than the 13th of June. No, Your Honor. The government confirmed that Mr. Hernandez had TPS on the first day, before — on June 13 — on June 13, 2013. And — Of course, that was the same day he was arrested for illegal reentry, which you concede was illegal. Yes. Illegal reentry. Yes, Your Honor. It was the same day. They — on the I-213 in the record, beginning on 1135, that's an exhibit under seal. On the third page of the I-213, the CBP agent states that he did have TPS, that TPS was confirmed. Also in the record are printouts from the record check from CBP, where you can see that it was confirmed on June 13 that he had TPS. And although he entered unlawfully, Your Honor, it's agreed — it's an agreement and an undisputed fact that at all times Mr. Hernandez held TPS. Even though he — well, I won't get into it. I was going to say, even though he left without getting the required approval from the Attorney General, you say it was because he didn't have the money. Well, Your Honor, yes. And the TPS statute specifically provides for allowing TPS applicants to leave the country without first obtaining advance parole. That's in 1254C4, treatment of brief, casual, and innocent departures and other absences. Well, why did you — then, if so, why did you say he didn't have the time to get the approval to leave the country? That's just — that's the fact, Your Honor. Well, if he didn't need it, why are you telling us he didn't have the time to get it? You implied he had to have it. I didn't mean to, Your Honor. I was asking your question as to why he didn't actually get advance parole prior to leaving. But the statute does not — it allows for treatment of brief, casual, and innocent departures and other absences. For example, the statute provides — 1254C4 provides that if — that an alien shall not be considered to have failed to maintain continuous residence in the United States due merely to a brief temporary trip abroad required by emergency or extenuating circumstances outside the control of the alien. You consider four months. You now tell us that he got back in illegally and was held hostage and escaped and came back in. You consider four months brief? Yes, Your Honor. Given that Mr. Hernandez has been in the United States since 1998, he's held TPS since — since 2000, and USCIS is possession — is in possession of all those facts and approved Mr. Hernandez's application for re-registration of benefits. USCIS is the agency that decides to deny re-registration for benefits or withdraws TPS benefits, and USCIS approved Mr. Hernandez's re-registration for TPS benefits. So Mr. Hernandez has proved to the agency that his brief — his trip was brief and due to extenuating an emergency situation. I do think that the Supreme Court's holding in Pereira is — is important for the Court to consider because prior to Pereira, when our briefs were submitted, it's our position that proceedings did not commence until 29 days after Mr. Hernandez's detention. But the Supreme Court has made clear that the definition of notice to appear in 8 U.S.C. Section 1229A must include the time and place of hearing. And although the decision in Pereira is about the stop-time rule in the intersection of 8 U.S.C. Section 1229A, the Court has stated that the very definition of 1229A includes at a minimum the time and place at which removal proceedings will be held. And therefore, under Pereira and a plain reading of the statute 8 U.S.C. Section 1229A, Mr. Hernandez was issued a defective notice to appear, and a defective notice to appear was filed in immigration court. A notice to appear as defined in 1229A was never filed in immigration court. And so under the regulations, it is our position that a notice to appear that complied with was never filed in immigration court. Thus, immigration proceedings never commenced. But even without Pereira, another important case to examine is Salmon v. the United States. That case arose out of the Southern District of Texas and was affirmed by this Court. In Salmon, the noncitizen was arrested and charged with overstaying his F-2 visa, and he was detained for 40 hours. A second CBP, Customs and Border Patrol agent, did another search of the records and found that Salmon was actually in legal status and that he had a valid H-1B visa, and they released him. And Salmon filed suit against the government in discovery. And the NTA was never filed in Salmon's case. So Salmon shows that the decision to issue a notice to appear is separate and distinct from the decision to file a notice to appear, because Salmon was issued a notice to appear and it was never filed. Also, in discovery in that case, it was revealed that the government had a policy of detaining everyone issued a notice to appear. So in Salmon, the decision to detain arose from the decision to issue an NTA and not from the decision to commence proceedings. So the decision to detain Mr. Hernandez did not arise from the decision to commence proceedings, and therefore 8 U.S.C. section 1252G does not strip the court of jurisdiction to hear this claim. All right. Thank you, Ms. Jesik. I see you're with the YACUB law offices in Virginia. Yes, sir. Is YACUB one of your partners, or is that an acronym? No. YACUB is the owner of the firm. I'm an associate, Your Honor. Okay. Thank you. Thank you. You've saved time for rebuttal. Thank you. Thank you. Mr. Pineda. Good morning, and may it please the Court. The government submits that the district court correctly granted a summary judgment motion dismissing the false imprisonment claim. And while the district court focused only on the government's state law defense, let me start with the threshold jurisdictional issues that were raised below. First, under the plain text of 1252G, courts lack jurisdiction to hear any cause or claim by any alien arising from the decision or action arising from the decision or action by the Attorney General to commence proceedings. In this case, the government made the decision to commence proceedings when it issued a warrant of arrest and notice to appear to Hernandez on June 13th when he was first brought to the Border Patrol Station for processing. What's your best case in support of that? The best case, Your Honor, is going to be the Hodgson decision, which is a Western District of Texas case. Well, do you have an appellate decision? There is, Your Honor. I'm not aware of an appellate decision. That's my understanding. Yes, Your Honor. The reason I mention Hodgson is Hodgson was a case where a district court applied this Court's Humphreys analysis to a case involving somewhat similar facts, or at least the same issue, that issue being whether a — whether detention — excuse me — whether — one of the arguments in Hodgson that the plaintiff had argued was that there's a sharp distinction between the initiation of proceedings, which was the issuance and service of the notice to appear, and the commencement of proceedings, that is, the filing of the notice to appear with the Immigration Court. And what the district court held in that case, Your Honor, was that even if there is a sharp distinction, it does not salvage the plaintiff's false imprisonment claim, because the act of issuing and serving a notice to appear that results in the alien's detention arises from the decision to commence proceedings. So that is the strongest case for the application of 1252G. In this case, the documents, the notice to appear and the warrant of arrest were issued on June 13th when the plaintiff was first booked at the Border Patrol Station, and they charged him as removable because he had entered the United States unlawfully. The plaintiff cannot brush aside the fact that his client — the plaintiff entered the United States unlawfully. And the documents ordered that the plaintiff was to appear before an immigration judge for removal proceedings. So the issuance of the plaintiff's decision to commence proceedings against Hernandez. And once the warrant of arrest and notice to appear were issued, Hernandez's detention was authorized under the plain text of 8 U.S.C. 1226A, which provides that on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. And therefore, under this Court's Humphreys analysis, Humphreys' decision, the false imprisonment claim should be barred by 1252G because, again, the government's decision to commence proceedings against Hernandez on June 13th by issuing the warrant of arrest and notice to appear to him was, in the language of Humphreys, an important event in the chain of causation that resulted in his detention. So in other words, the issuance of the warrant of arrest and notice to appear was a direct, immediate, and recognizable cause of Humphreys' detention and the false imprisonment claim. And as I note, at least one district court has applied Humphreys' analysis to the same issue in this case. The second jurisdictional basis raised, Your Honor, was under 1226E. And under that statute, it states that the Attorney General's discretionary judgment regarding the application of that section shall not be subject to review. But, Your Honors, that is precisely what Hernandez is asking this Court to do. Hernandez is asking the Court to use it to review the government's decision to review its decision to use his authority under 1226A to detain him once the warrant of arrest and notice to appear were issued. And so as such, under the plain text of 1226E, this Court lacks jurisdiction. And, Your Honor, as to the remaining State law defense, this was the defense that the State — the district court focused on. It's important to point out that the — this is an FTCA case. So the question here is not whether a Federal statute was violated, whether that TPS statute that the plaintiff referenced was violated. The issue is, this is a — because it's a tort claim for — for money damaged against the United States, the question is whether or not the United States would be liable under Texas law for what happened, for the tort of false imprisonment. And, Your Honor, the answer is no. Under Texas law, the elements of false imprisonment are willful detention, willful — without consent and without authority of law. But Texas courts and this Court, as well as district courts within this circuit, have all recognized that it's a complete defense to a claim for false imprisonment if the arrest or detention was done by virtue of process legally sufficient in form and duly issued by an official having jurisdiction to do so. And, Your Honor, the elements of the — of that defense are met in this case. There is no dispute that the detention here was done pursuant to a warrant of arrest and notice to appear in immigration court charging Hernandez as removable due to his unlawful entry in June 2013. Your Honor, that's clear from the face of those documents themselves. There's also no dispute that the warrant of arrest and notice to appear were validly issued, that they are facially valid and issued by a person who had authority to do so. The other point to make, Your Honors, is that under Texas law, false imprisonment and false arrest have the same elements. And there is no dispute that Hernandez's arrest was lawful. He concedes his arrest was lawful. Now, I can answer any questions, or I can respond to some of the points the counsel made. We have questions. We'll let you know. Thank you, Your Honor. Your time, so you can either use it or stop as you please. Thank you, Your Honor. The plaintiff points this Court to the plain text of the TPS statute. But the government would make two points in response. One is the plain text of 1226a provide authority for what happened in this case. The plain text of 8 U.S.C. 1182a6aI required that the plaintiff was to submit himself for inspection at a designated port of entry. The TPS statute does not waive those requirements. In other words, the TPS statute is not a free pass to its possessor to forevermore thereafter violate the immigration laws of the United States without consequence. Nor can he ask the Court to simply brush aside the fact that he entered the United States unlawfully. The second point to make, Your Honor, is if this Court looks at the overall structure of the TPS statute, it indicates that Congress did not intend for what happened here, for an alien with TPS to travel outside the United States for up to seven months, four months, seven months, without prior government approval. As Mr. Hernandez acknowledged, the TPS statute states that an alien may travel abroad with the prior consent of the Attorney General. In addition, Your Honors, there are eligibility requirements that TPS recipients have to maintain continuous physical presence and continuous residence in the United States while they have TPS. And the TPS statute also provides that an alien's TPS can be taken away if he does not meet those requirements. So, Your Honors, when immigration officials first encountered Hernandez in June 2013, they were dealing with someone who had violated the TPS statute himself by failing to obtain advance parole before he left the United States some seven months before. His employment authorization card in this person stated on a few weeks. And Hernandez then compounded those violations of the TPS statute by entering the United States unlawfully. So, Your Honors, respectfully, it was altogether reasonable for the immigration officers here to issue a warrant of arrest and a notice to appear to Hernandez when they processed him at the Border Patrol Station on June 13, 2013. Your Honors, this is not a case, again, the Court cannot brush aside the fact that it came unlawfully. And, Your Honors, this is not a case where Hernandez was simply minding his business, living and working in the United States, and immigration officials simply picked him up. This is a case involving and detained him. This is a case, this situation here is one of Hernandez' own making. When he entered the United States unlawfully. Unlawful rationale if it's expressed for this category of TPS, temporary protected status, as opposed to, say, lawful permanent resident. The rationale, well, the requirements have to do with, my understanding is the rationale for TPS is for certain countries designated by the government because of natural disaster or some situation happened. This was the earthquake in Honduras, natural event. It was back in 2001 that the plaintiff was initially, Honduras, I believe, around that time was designated. Well, why is someone allowed to stay almost 20 years for an earthquake that occurred in 2001? Your Honor, I don't know the answer to that question, but the statute does provide for a periodic review, and I don't know why the government has continued to renew that. A second, another point the government would make, Your Honor, is the practical effect of what Hernandez is arguing in effect. Because it would apply, the practical effect of his argument, going to the 1252G issue now, it would not just apply to aliens with TPS, but really any alien in immigration detention. Because under the plaintiff's theory, every alien in immigration detention has a false imprisonment claim capable of defeating the 1252G bar unless the government issues and files the notice to appear at the same time, at the very moment that the government takes custody of the alien and processes them at the Border Patrol Station. Well, Your Honor, if that were the result, it would effectively take away the government's discretion about when to file a notice to appear. And certainly, practically speaking, it would take away any time for ICE attorneys to review the sufficiency of a notice to appear before filing. Your Honor, as to the issue Hernandez — one of the issues Hernandez pointed out was he argues that there was a fact issue as to whether the government served him with a notice to appear. And this goes to the state law defense. Your Honor, the government would make three brief points. First, he never disputes that his — Was there a signed NTA in the record? There is a signed NTA in the record. He signed it. Yes, Your Honor. On the day of June the 13th. He did sign it. There's no dispute that he signed it. He also — there's no dispute that he was issued and served a warrant of arrest. There's no dispute that his signature is also on the notice of rights and a list of free legal services, all that he received, all on that same day, June 13th. Your Honor, the other point to make is there really is no plausible argument for Hernandez to argue that he was unaware that the government intended to initiate proceedings against him, given the circumstances of his apprehension, given his signature on the documents, and given his immigration detention. The other point to make, Your Honor, is that under Texas law, going back to the defense under Texas law, the government establishes the elements of its defense if the arrest or detention was done by virtue of process, legally sufficient form, and duly issued by an official having jurisdiction to issue it. Now, there really is nothing analogous to a notice to appear under State law. But there is for a warrant of arrest. And, again, there's no dispute here as to the facial validity of the arrest warrant. And numerous courts, in cases cited in the brief, have held in suits against law enforcement officers that the false imprisonment claim failed because when the arrest occurred or detention occurred pursuant to a facially valid arrest warrant. The other point I would make, Your Honor, and it's to specifically highlight two of the cases in the government's brief having to do with the State law defense here, and that is the Ita-Cheta case and the Emerson v. Borland case. In the Ita-Cheta case, in that case was out of the Southern District of Texas. In that case, you had a plaintiff. And the reason why I cite those cases is because those cases arguably they involve an arrest warrant that had its origin in a misapplication, misinterpretation of the law. And even so, a false imprisonment claim was defeated when the defense was established. In Ita-Cheta, specifically, the plaintiff filed a false imprisonment claim after he was apprehended, placed in immigration detention, and deported because the requirements to acquire U.S. citizenship. And it turned out later on that the government had been mistaken, that the section of the Mexican Constitution that had been cited in denying that that plaintiff's previous certificates of citizenship, that article, that section of the Mexican Constitution did not even exist. Even so, when the plaintiff later filed suit in district court, the district court analogized the issue to an arrest warrant executed under State law. And the court held in that case denial of the plaintiff's United States citizenship based on a mistaken application of the law still did not render any of the documents, the arrest warrant, as facially invalid. And thus, the false imprisonment claim was defeated. In Everson v. Borland, that case was against the State fire marshal, State officials. And through a series of events, the State fire marshal had misinterpreted a State statute having to do with certain labeling requirements as to the sale of portable fire extinguishers. It turned out he was probably incorrect in his interpretation. But through a series of events, the State fire marshal issued a bulletin statewide regarding which portable fire extinguishers were illegal for sale. And eventually, a local DA issued an arrest warrant. And the plaintiff who sold fire extinguishers in that case was arrested. Ultimately, the charges were dismissed. He filed a false imprisonment claim, amongst other claims, against State officials. And the court held in that case that the false imprisonment claim was defeated because the form of the process by which the warrant of arrest was issued was not challenged. It was a facially valid arrest warrant. And that the court was prohibited from looking behind the form of the process because the inquiry ends if the arrest warrant is valid. Let me ask you about exactly what it is that you're requesting. I'm looking at your brief, the last page, page 42. You say the district court's judgment dismissing Hernandez's false imprisonment claim should be affirmed. And on page 14, you say you acknowledge that the district court did not base its decision on jurisdictional grounds. Obviously, we have to decide jurisdictional issues regardless of what the parties say. But I want you to be clear about what it is that you're asking us to do. If we rely on the district court's judgment, we would be addressing the merits, including possibly State law. But if we decide on jurisdictional grounds, we would not. So what is it that the United States is asking us specifically to do? Yes, Your Honor. It is the government's position that the false imprisonment claim is barred by Section 8 U.S.C. Section 1252G, as well as 8 U.S.C. 1226E. And assuming for the sake of argument that there was jurisdiction here, the court the government established its defense, its complete defense under Texas law to the false imprisonment claim. All right. I think I understand, but I want to be clear, and I'm not trying to put words in your mouth. Yes, Your Honor. Is the government primarily telling us that we should affirm the dismissal in the district court, but for want of subject matter jurisdiction? That's correct, Your Honor. All right. Anything else? And I want to be clear, too. That's correct, but for all the reasons stated, that the court lacks jurisdiction, but even looking at the merits, the government establishes defense. All right. Thank you, Mr. Kneedl. Thank you, Your Honor. Ms. Jessik, you've saved time for rebuttal. Thank you, Your Honor. I'd like to address the defendant's State law defense about the defendant cited a where that state that if an arrest and detention is carried out under a facially valid warrant of arrest, there can be no claim for false imprisonment. Of course, detention based on immigration charges is civil detention, not criminal detention. No judge makes a determination of probable cause before the issuance of a warrant, and the detained person does not have the right to see a judge within 48 hours. Arrest and detention of noncitizens is covered by the statute. The government states that the warrant of arrest and notice to appear gives the government authority pursuant to 8 U.S.C. section 1226A and its implementing regulations to detain a noncitizen with TPS. And the statute specifically prohibits detention of noncitizens with TPS under 1254A.D.4, and it's an undisputed fact that the government knew that Hernandez had TPS from the first day of his detention. But he entered the country, you concede, illegally. Yes, Your Honor. And I don't believe that, you know, it's somewhat of a stretch to say because he's got TPS, he's got a free pass to do anything he wants, leaving and entering illegally into this country. No, Your Honor, we're not saying that he has. And what are you saying? The fact that he entered the United States unlawfully makes him inadmissible and removable. And TPS specifically waives inadmissibility for the purpose of the statutory scheme. He's still removable. And when the government charges Mr. Hernandez with removability, it's because he entered the United States unlawfully. So his immigration status is removable. And the statute specifically prohibits the government from detaining noncitizens with TPS on the basis of their immigration status. His immigration status is inadmissible and removable. And the statute prohibits the government from detaining noncitizens with TPS based on their immigration status. Read the exact language you're relying on in the statute. A noncitizen—I'll read the exact statute, Your Honor. Thank you. Detention of the alien. Cite the statute. AUSC section 1254A, section D4. All right. An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States. That's my point. He wasn't detained on the basis of his immigration status. He was detained for unlawfully reentering the United States. Your Honor, he was not charged with a crime. That can be a crime and he wasn't charged with it. He was given an arrest warrant. An immigration arrest warrant. But your argument, I know you're sincere in your argument, but your argument is that he could just come and go as he pleased, enter illegally as much as he wanted, but he can never be detained. Your Honor, my argument is not that he can go as he please. If he proves to USCIS that he has under 1254A, C4, that his absences from the United States are a brief temporary trip abroad required by emergency or extenuating circumstances outside the control of the alien, USCIS will not withdraw TPS status. Then that's where we get back to what we were talking about on your opening argument, whether four months or seven months is, quote, brief, close quote. Yes, USCIS, the agency, has already made that determination, Your Honor, and approved his re-registration for temporary protected status. When was that decision made? 2015, Your Honor. Right, 2015, not June 13, 2013, before he was detained for, what, 27 days? Yes, Your Honor. All right. Thank you. Thank you, Your Honor. All right. Thank you, Mr. O'Connor. The brief is under submission, and the Court will take a brief recess.